IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAPQUEST, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.   08 C 1732 |
| v. | ) | |
| CIVIX-DDI, LLC, a Colorado Corporation, | ) | JUDGE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff MapQuest, Inc. ("Plaintiff" or "MapQuest") brings this action against Defendant CIVIX-DDI ("Defendant" or "CIVIX"), alleging a breach of contract and a breach of the covenant of good faith and fair dealing, and seeking a declaratory judgment and a permanent injunction. In response, CIVIX has filed four counterclaims: Counterclaim I alleges unfair competition in violation of the Lanham Act, Counterclaim II alleges tortious interference with prospective economic advantage, Counterclaim III is a cause of action for breach of contract, and Counterclaim IV is a cause of action for breach of the covenant of good faith and fair dealing. MapQuest now moves to dismiss CIVIX's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

**BACKGROUND**

For the purposes of this motion, the well-pleaded factual allegations in CIVIX's Answer and Counterclaims ("Counterclaims") are accepted as true. Fed. R. Civ. P. 12(b)(6). MapQuest is a corporation organized under the laws of the State of Delaware. CIVIX is a limited liability corporation organized under the State of Colorado. MapQuest originally filed the case in the Circuit Court of Cook County, Illinois, then CIVIX removed the state court action to this court, pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332.

CIVIX is the owner of U.S. Patent Nos. 6,385,622; 6,408,307; and 6,415,291 (the "CIVIX patents"), which are patents relating to geographical search technology. Counterclaims ¶ 6. CIVIX's current business is the licensing and enforcement of the CIVIX patents. *Id.* In 1999, CIVIX sued MapQuest for patent infringement. *Id.* at ¶ 8. On May 3, 1999, CIVIX and MapQuest settled that lawsuit, and entered into two integrated agreements (collectively, the "MapQuest Agreement"). *Id.*; Compl. ¶ 2.[1] The MapQuest Agreement includes a license that provides MapQuest with the right to "make, create, modify, improve, design, have made, import, use, sell or offer for sale, sublicense, transfer and/or assign any and all past, present, and future MAPQUEST Technology covered by any claim of the CIVIX Patents" and "to sublicense, transfer and/or assign to any MAPQUEST customer the right to undertake any and all past, present and future Permitted Uses with respect to the MAPQUEST Technology." Compl. ¶ 6. The MapQuest Agreement further grants a "concurrent right of use by MapQuest's end users, and by each such customer's customers and end users, of the MAPQUEST Technology and the Permitted Uses." *Id.* The license also was expressly confined to "proprietary" products that were both "created and developed" by MapQuest. Counterclaims ¶ 8.

The MapQuest Agreement also contained a covenant not to sue that prohibited CIVIX from suing MapQuest or MapQuest customers with respect to certain uses:

> CIVIX hereby covenants and agrees that neither CIVIX not [sic] any successor or assign of CIVIX will bring *any lawsuit,* cause of action, claim or demand *of any kind against* (i) MAPQUEST, with respect to the creation, modification, improvement, design of, or any manufacture, importation, use, license, sale or offer for sale by MAPQUEST of, the MAPQUEST Technology or the Permitted Uses to any of its customers who sublicense, purchase or use MAPQUEST Technology, or (ii) **any MAPQUEST customer**, with respect to the creation, modification, improvement, design of, or any manufacture, importation, use, sale or offer for sale by any such customer, of the MAPQUEST Technology or the Permitted Uses, or (iii) any MAPQUEST end user, or any

---
[1] Facts from MapQuest's complaint that CIVIX has admitted will be accepted as true for purposes of the motion to dismiss.

2

> MAPQUEST customer's customer or end user, with respect to the MAPQUEST Technology or the Permitted Uses.

Compl. Ex. B at 3, ¶ 7 (emphasis added). MapQuest alleges that, despite the covenant not to sue, CIVIX has filed multiple lawsuits alleging infringement of the CIVIX patents against MapQuest customers based on their use of MapQuest products and services, thus violating the terms of the MapQuest Agreement. Compl. ¶ 15.

CIVIX denies MapQuest's allegations and counterclaims that MapQuest has directly interfered with CIVIX's efforts to license the CIVIX patents by improperly representing to infringers that by buying products sold by MapQuest, they are licensed under the CIVIX patents. *Id.* at ¶ 10. CIVIX alleges that MapQuest has made such representations even as to products that MapQuest did not "create and develop," that are not proprietary, or that are merely pass-through products created and developed by third parties. *Id.* One example CIVIX cites is MapQuest's resale of "geocodes," which MapQuest purchases from other vendors. *Id.* at ¶ 11. A "geocode" is the precise latitude/longitude that corresponds to the location of something, e.g. a hotel. *Id.* CIVIX argues that the sale or use of a geocode by itself would not infringe any claim of the CIVIX patents, but that geocodes are used in systems which infringe such patents. *Id.* CIVIX contends that such geocodes are not "created and developed by MapQuest," nor "proprietary." *Id.*

CIVIX alleges that MapQuest has represented that the use of geocodes supplied by MapQuest confers a license of the CIVIX patents, and has encouraged infringers to make such a claim and not pay for a license under the CIVIX patents. *Id.* at ¶ 12. CIVIX also alleges that MapQuest has actively assisted infringers by serving as a conduit for geocodes supplied by other companies precisely to create infringers' claims that they are already licensed under the CIVIX patents. *Id.* As the result of MapQuest's conduct, CIVIX claims, infringers have refused to

negotiate a license of the CIVIX patents. *Id.* at ¶ 13. MapQuest now moves to dismiss CIVIX's counterclaims.

**STANDARD**

On a motion to dismiss for failure to state a claim upon which relief can be granted, the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, 493 (7th Cir. 1998) (citation omitted). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the complaint that under no plausible facts may relief be granted. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625. Although "[a]ll the complaint need do to withstand a motion to dismiss for failure to state a claim is outline or adumbrate a violation of the statute or constitutional provision upon which the plaintiff relies and connect the violation to the named defendants," *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 459 (7th Cir. 2007) (quoting *Brownlee v. Conine,* 957 F.2d 353, 354 (7th Cir.1992) (internal citations and quotation marks omitted)), surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007); *see also Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (citing *Bell Atlantic*).

**ANALYSIS**

1. **Count I: Unfair Competition Under the Lanham Act**

CIVIX's first claim alleges unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), arguing that "MapQuest's false and misleading statements are material and likely to mislead and confuse consumers of geographic search products and to discredit CIVIX in its licensing efforts." Counterclaims ¶ 32. "To establish a claim under the false or deceptive advertising prong of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

First, MapQuest argues that CIVIX has pled itself out of court by "conceding that, '[t]he sale or use of a geocode in and of itself would not infringe any claim of the CIVIX patents.'" Mot. to Dismiss 5 (citing Counterclaims ¶ 11). MapQuest contends that this statement should be interpreted to mean that CIVIX cannot plead that it has suffered any actual injury as a result of MapQuest's actions. This argument simply misstates the harm that CIVIX alleges. CIVIX indeed concedes that the geocodes themselves do not infringe the patent, but its alleged injury is not a patent violation: the claim is about the scope of MapQuest's license rights under the Agreement. MapQuest has represented to its customers that the use of geocodes supplied by MapQuest confers a license for the CIVIX patents; CIVIX argues that the MapQuest Agreement does not provide MapQuest the right to confer license rights for the CIVIX patents for such

sales, so MapQuest's statements to its customers (that they are already licensed by CIVIX) interferes with CIVIX's ability to enter into licensing agreements with those customers. This, not the patent violation, is the nature of the injury that CIVIX alleges.

MapQuest also argues that it and CIVIX are not engaged in the same business and therefore MapQuest cannot assert a discernible competitive injury. CIVIX has alleged facts that could lead this Court to conclude that both MapQuest and CIVIX are engaged in the licensing (or sublicensing) of the CIVIX patents. Counterclaims ¶ 6 ("CIVIX's current business is the licensing and enforcement of the CIVIX patents."); *see e.g.* Compl. ¶ 20 ("Verizon [a MapQuest customer] was, at all relevant times, a licensed user of proprietary products or services created and developed by MapQuest [i.e. products or services subject to sublicensing rights under MapQuest Agreement]."). MapQuest's allegedly false statements to its customers regarding its sublicensing rights could injure CIVIX insofar as they discourage those customers from licensing directly with CIVIX. Under these facts, this Court could conclude that MapQuest and CIVIX are engaged in the same business.

Next, MapQuest alleges that CIVIX fails to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), which provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

*Id.* In cases involving misrepresentations, Rule 9(b) requires the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (citing *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990)). *See also* MPC Containment Systems, Ltd. v. Moreland, No. 05 C

6973, 2006 WL 2331148, at *2 (N.D.Ill. Aug. 10, 2006) (dismissing § 43(a) false advertising action under Rule 9(b) standard for failure to allege the "when" and "how" of the alleged misrepresentation); *Fisher & Paykel Appliances, Ltd. v. LG Electronics, Inc.*, No. 03 C 50146, 2003 WL 21910622 at *1 (N.D.Ill. Aug. 7, 2003) (same). While the plaintiff need not plead evidence, the pleading must satisfy the purposes of Rule 9(b), "which are: (1) to inform defendants of the alleged wrongs and enable them to form an adequate defense and response; (2) to eliminate the filing of conclusory complaints as a pretext for detecting additional wrongs; and (3) to shield defendants from unfounded fraud charges that might injure their reputations." *Hot Wax. Inc. v. Grace-Lee Products,* No. 97 C 6882, 1998 WL 664945, at *3 (N.D.Ill. Apr. 15, 1998).

Under Rule 9(b)'s heightened pleading standards, CIVIX's first counterclaim cannot survive a Rule 12(b)(6) motion to dismiss. *See Bell Atlantic*, 127 S.Ct. at 1965 (to surviving a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."). CIVIX's factual allegations are thin: they allege only that MapQuest

> improperly represented to infringers that by buying products sold by MapQuest they are licensed under the CIVIX patents . . . . MapQuest has represented that the use of geocodes supplied by MapQuest confers a license of the CIVIX patents, and has encouraged infringers to make such a claim and not pay for a license under the CIVIX patents. It also appears, upon information or belief, that MapQuest has actively assisted infringers by serving as a conduit for geocodes supplied by other companies precisely to create infringers' claims that they are already licensed under the CIVIX patents.

Counterclaims ¶ 10, 12. These allegations contain many words, but nonetheless say nothing about the content, form, location, or method of communication of the alleged false statements. CIVIX's failure to allege sufficient facts is more startling given the fact that it appears to have been engaged in litigation with MapQuest arising out of the same licensing agreement and patents for at least five years, yet even now can only allege that MapQuest made abstract

7

"representations" to unspecified entities. CIVIX excuses its unspecific allegations by claiming for the first time that MapQuest's "misrepresentations were made over time, so Rule 9(b) is applied less stringently. The case CIVIX cites for this proposition, *Second Chance Body Armor, Inc. v. American Body Armor, Inc.*, No. 94 C 6178, 1996 U.S. Dist. Lexis 14561 at *9-12 (N.D. Ill. Sept. 30, 1996), does not comment on the ostensible relaxation of Rule 9(b)'s standards for allegations of misstatements made over time, nor contain the language that CIVIX quotes in its brief. It is not the job of this Court to conduct research or develop arguments for the parties. CIVIX also argues that additional details may be addressed during discovery, but the purpose of Rule 9(b)'s heightened pleading standard is, in part, "to eliminate the filing of conclusory complaints as a pretext for detecting additional wrongs." *Grace-Lee Products,* 1998 WL 664945, at *3. The Court is not convinced by CIVIX's excuse for its failure to allege MapQuest's alleged wrongdoing with greater specificity.

Furthermore, with these minimal allegations, the Court cannot conclude that CIVIX has pled sufficient facts to demonstrate that MapQuest's alleged statements constitute "commercial advertising or promotion" within the meaning of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Were the "representations" person-to-person communications with customers, or widely-distributed anonymous advertisements, or directed pamphlets, or remarks made at a trade convention? *See e.g. First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001) ("[A]n advertisement read by millions (or even thousands in a trade magazine) is advertising, while a person-to-person pitch by an account executive is not."); *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (letters sent to customers do not come within the scope of § 43(a)(1)(B) "commercial advertising or promotion," which does

not cover all deceitful business practices). The Court declines to speculate. Accordingly, MapQuest's motion to dismiss Counterclaim I is GRANTED.

**2. Count II: Tortious Interference**

CIVIX's second counterclaim is a cause of action alleging tortious interference with prospective economic advantage. Under Illinois law, a complaint adequately pleads such a cause of action if it alleges facts establishing: (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference. *Voyles v. Sandia Mortg. Corp.*, 196 Ill.2d 288, 300-01, 751 N.E.2d 1126, 1133, (2001). Under Colorado law,[2] a tort of intentional interference with a prospective business relation also requires a "prospective contractual relation" and "interference consist[ing] of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (quoting the Restatement (Second) of Torts § 766B (1979)).

MapQuest moves to dismiss this claim for two reasons. The first is easily disposed of. MapQuest states: "Because CIVIX concedes that geocodes do not infringe its patent rights, and because CIVIX does not dispute that the [MapQuest Agreement] vests MapQuests customers with a sublicense to use technologies which practice the claims of the CIVIX patents, the

---

[2] In dealing with choice of law issues in the area of tort, Illinois courts apply the law of the state in which the tort occurred unless another state has a more significant relationship to the occurrence or the parties. *Reid by Reid v. Norfolk & Western Ry. Co.*, 157 F.3d 1106, 1110 (7th Cir. 1998). As discussed further below, it is unclear in which state CIVIX is alleging this tort occurred. However, because the elements of tortious interference are substantially the same in Illinois and Colorado, the two potential states in which the tort occurred, the following analysis applies to either state.

requisite element of causation is accordingly absent from [Counterclaim] II." Pl.'s Mot. to Dismiss 12. As discussed above, this misstates the harm that CIVIX alleges. CIVIX alleges that the limited license granted to MapQuest in the MapQuest Agreement was limited to "proprietary" products that were "created and developed" by MapQuest, and that the geocodes were not covered by the Agreement. Thus MapQuest's alleged statements to its customers (that the purchase of geocodes conferred upon the customers a license to use the CIVIX patents) discouraged the customers from licensing directly with CIVIX and caused CIVIX to lose prospective business.

MapQuest's second argument for dismissing the second counterclaim is slightly trickier. MapQuest argues that CIVIX has failed to allege any reasonable expectation of entering into a licensing agreement with MapQuest customers. According to MapQuest, CIVIX is required to plead facts showing that "third parties actually contemplated entering into a business relationship" with it in order to survive a motion to dismiss. *Celex Group Inc. v. Executive Gallery, Inc.*, 877 F.Supp. 1114, 1125-26 (N.D. Ill 1995). However, the Seventh Circuit has unequivocally held that the "Federal Rules do not require that [a] complaint allege the specific third party or class of third parties with whom [the plaintiff] claims to have had a valid business expectancy. [The plaintiff] has alleged that such an expectancy existed and that [the defendant] purposely interfered with it. Consistent with those allegations, he might be able to prove a set of facts (including the identity of the parties or class of parties) that would entitle him to relief." *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998). MapQuest replies that the *Cook* decision was premised on the laxer standard for pleadings articulated *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief."), whereas the Supreme Court's subsequent decision in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007) raised the level of detail required for pleadings to survive a Rule 12(b)(6) motion, casting doubt onto the continuing validity of *Cook.*

Under *Bell Atlantic*, a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, but a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. 127 S.Ct. at 1964 -1965. Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 1965. Even under the *Bell Atlantic*'s standard, CIVIX's second counterclaim survives the motion to dismiss. CIVIX's counterclaim is neither merely speculative nor a formulaic recitation of the elements of a cause of action for tortious interference with a business expectancy. If CIVIX is correct that the MapQuest Agreement does not provide sublicensing rights for systems using geocodes, then MapQuest's statements to its customers that they were already sublicensed for the CIVIX patents were lost licensing opportunities for CIVIX. Such an expectancy is reasonable: two of MapQuest's customers (Orbitz and Travelocity) have, following litigation on the same issue, licensed the CIVIX patents. Compl. ¶ 23, 32; Counterclaims ¶ 7. It is not merely speculative that other MapQuest customers would enter into such licensing agreements with CIVIX. Accordingly, the motion to dismiss CIVIX's second counterclaim is DENIED.

3.  **Count III: Breach of Contract**

In its third counterclaim, CIVIX alleges that MapQuest breached the confidentiality clause of the MapQuest Agreement when it attached the MapQuest Agreement as Exhibits A and

B to the complaint in this case. The MapQuest Agreement obligated MapQuest to keep the terms of the agreement confidential. It states:

> CIVIX and MAPQUEST further agree that the terms of this Agreement will remain confidential and will not be publicly disclosed or produced in any litigation except as required by law or pursuant to a subpoena or court order, and then only after notice is given to the parties of any such subpoena or order.

Compl. Ex. A at 4, Ex. B at 5. CIVIX alleges that the complaint that MapQuest filed on December 11, 2007 (which CIVIX subsequently removed to this Court) disclosed the entire MapQuest Agreement to the public. *Id.* at ¶ 42, 44.

MapQuest responds with three arguments for its motion to dismiss this claim, all of which state insufficient grounds for dismissal under Fed. R. Civ. P. 12(b)(6). First, it argues that the material terms of the contract had previously been disclosed by the summary judgment opinions in *CIVIX-DDI, LLC v. Nat'l Ass'n of Realtors*, No. 05 C 6869, 2007 WL 178318 (N.D. Ill. Jan. 22, 2007) and *CIVIX-DDI, LLC v. CellCo Partership d/b/a Verizon Wireless*, No. 03 C 3792, 2004 WL 2966928 (N.D.Ill. 2004). Because the material terms of the Agreement had already become public domain, MapQuest argues, it did not violate its confidentiality obligations. While it is true that the summary judgment opinions in these cases did quote some of the language from the MapQuest agreement—e.g., language relating to the license or the covenant not to sue—MapQuest's attachment of the Agreement to its complaint disclosed *all* of the Agreement, including terms—like the amount of money paid as part of the 1996 settlement— that the summary judgment opinions did not disclose. MapQuest makes no attempt to define the "material" provisions of the Agreement, and does not explain why the newly-disclosed settlement figure would not be considered material. MapQuest's disclosure of these additional terms could constitute a violation of the confidentiality agreement, so dismissal of this counterclaim would be inappropriate under this theory.

Second, MapQuest argues that by attaching the MapQuest Agreement to its complaint, MapQuest was merely following Illinois law, which requires a breach of contract claimant to attach to its complain the written instrument on which the contract action is based, 735 ILCS 5/2-606. On its own terms, the confidentiality agreement permits the parties to disclose the terms of the Agreement "in any litigation as required by law," but requires first that the other party be given notice. It is not clear that this litigation *required* disclosure of the terms of the Agreement; MapQuest did not file its complaint under seal or redact confidential material from the Agreement before attaching it to the complaint. Counterclaims ¶ 43. Even if disclosure were required by law, MapQuest was required to give notice to CIVIX before such disclosure. This argument to dismiss CIVIX's third counterclaim therefore fails to persuade the Court.

Finally, MapQuest argues that CIVIX has already materially breached the MapQuest Agreement, by litigating against MapQuest customers despite the covenant not to sue. Whether CIVIX has breached the covenant not to sue is not an undisputed fact; in fact, it is the subject of this litigation. MapQuest's unsupported assertion that CIVIX has breached the MapQuest agreement is insufficient to defeat CIVIX's claim for breach of confidentiality at the motion to dismiss stage. Therefore, MapQuest's motion to dismiss CIVIX's third counterclaim is DENIED.

4. **Count IV: Breach of the Covenant of Good Faith and Fair Dealing**

MapQuest argues that CIVIX's fourth claim should be dismissed because Illinois courts do not recognize independent causes of action for the breach of the implied covenant of good

faith and fair dealing.[3] In response, CIVIX argues that choice of law rules do not require this Court to apply Illinois contract law.

When a district court sits in diversity, as this Court does now, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding. *Klaxon v. Stentor Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). In Illinois, a contract dispute obligates the courts to apply the law either of the state with the most significant relationship or of the state where performance is to occur. *United Thermal Industries, Inc. v. Asbestos Training & Employment, Inc.*, 920 F.2d 1345, 1348 (7th Cir. 1990). When there are competing relationships to different states, the place of performance can be determinative. *Feldman Assocs. v. LinGard & Assocs.,* 676 F.Supp. 877, 882 n. 3 (N.D.Ill. 1988) ("When a contract is to be performed primarily in one state, and when the other 'most significant contacts' factors prove inconclusive, the law of the place of performance governs any litigation arising from the contract.").

The states relevant to this lawsuit are in dispute, but nonetheless neither choice of law test points this Court to Illinois law. MapQuest contends that it is a Delaware corporation with its principal place of business in Colorado; CIVIX argues that under the Seventh Circuit's "nerve center" test, MapQuest's principal place of business is in Pennsylvania. Compl. ¶ 1; Notice of Removal ¶ 6. The parties agree that CIVIX is a Colorado corporation, but MapQuest asserts that CIVIX's principal place of business is Illinois, Compl. ¶ 2, and CIVIX claims its principal place of business is Virginia. Notice of Removal ¶ 9. The MapQuest agreement was executed to resolve federal litigation pending in the District of Colorado. MapQuest argues that Illinois law

---

[3] Oddly, MapQuest's second cause of action is for breach of the covenant of good faith and fair dealing. If this Court were to accept MapQuest's reasoning, it would be required to dismiss MapQuest's claim in addition to CIVIX's.

14

does not support an independent cause of action for breach of implied covenant of good faith and fair dealing. Illinois courts have steadfastly refused to recognize an independent tort arising from the breach of this contractual covenant. *Iowa Physicians' Clinic Medical Foundation v. Physicians Ins. Co. of Wisconsin*, 547 F.3d 810, 812 (7th Cir. 2008) (citing *Voyles v. Sandia Mortgage Corp.,* 196 Ill.2d 288, 751 N.E.2d 1126, 1130-31 (2001)), *see also In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006) (under Illinois law, covenant of good faith and fair dealing is a rule of construction, not a stand-alone obligation). However, Colorado law does support a cause of action for breach of the covenant of good faith and fair dealing. *See, e.g.*, *Bayou Land Company v. Talley*, 924 P.2d 136, 154 (Colo. 1996) (recognizing cause of action for implied covenant of good faith and fair dealing).

The Court declines to determine at this juncture which state's contract law will govern this dispute, since facts adduced during discovery will assist in that determination. However, it is clear that relief is possible under Colorado law, and therefore MapQuest's motion to dismiss CIVIX's fourth counterclaim is DENIED.

## CONCLUSION

For the foregoing reasons, MapQuest's Motion to Dismiss is GRANTED with respect to Counterclaim I, and DENIED with respect to Counterclaims II, III, and IV.

    Enter:
    <u>/s/ David H. Coar</u>
    David H. Coar
    United States District Judge

**Dated:** February 11, 2009