IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAPQUEST, INC., a Delaware Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 1732 |
| v. ) | |
| CIVIX-DDI, LLC, a Colorado Corporation, ) | JUDGE DAVID H. COAR |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff MapQuest, Inc. ("Plaintiff" or "MapQuest") originally brought this action against Defendant CIVIX-DDI ("Defendant" or "CIVIX") in the Circuit Court of Cook County, Illinois County Department, Law Division, on December 11, 2007, alleging a breach of contract and a breach of the covenant of good faith and fair dealing, and seeking a declaratory judgment and a permanent injunction. In response, CIVIX filed four counterclaims: unfair competition in violation of the Lanham Act, which was dismissed by this Court on February 11, 2009, tortious interference with prospective economic advantage (Counterclaim II), breach of contract (Counterclaim III), and breach of the covenant of good faith and fair dealing (Counterclaim IV).

CIVIX also filed a notice of removal with this Court in accordance with 28 U.S.C. § 1446(a) on March 25, 2008. In its complaint, MapQuest stated that MapQuest was a Delaware corporation with its principal place of business in Colorado. In its Notice of Removal, CIVIX contended that this Court had original jurisdiction under 28 U.S.C. § 1332, because CIVIX is a Colorado limited liability company with its principal place of business in Virginia and MapQuest is a Delaware corporation with its headquarters allegedly in Pennsylvania. The parties thereafter undertook over twelve months of fact and expert discovery and, at the close of discovery, filed

1

cross-motions for summary judgment which were fully briefed as of July 16, 2009. MapQuest now moves to remand the case to state court in accordance with 28 U.S.C. § 1447(c), arguing that this Court does not have jurisdiction over the matter because the parties are not diverse, and that MapQuest's principal place of business is Colorado, not Pennsylvania.

Section 1332 of the Title 28 of the United States Code provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principle place of business." 28 U.S.C. § 1332. In the Seventh Circuit, "a company's principal place of business is where its 'nerve center' is located, or, more concretely, where its executive headquarters are located" as of the filing of the notice of removal. *Illinois Bell Telephone Co., Inc. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 590 (7th Cir. 2008); *MAS Capital, Inc. v. Biodelivery Sciences Intern., Inc.*, 524 F.3d 831, 832 (7th Cir. 2008). Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." MapQuest's motion to remand argues that MapQuest is a citizen of Colorado because its principal place of business in March 2008, when CIVIX filed its notice of removal, was in Colorado.

CIVIX's evidence in support of its contention that MapQuest is headquarted in Pennsylvania is thin. It offers three unauthenticated webpage printouts: a page allegedly from MapQuest's website representing that company headquarters are in Colorado and Pennsylvania; a page allegedly from MapQuest's United Kingdom website representing the same; and an interview with MapQuest executive Mark Law representing the same. CIVIX also contends that the parties are diverse because MapQuest's Local Rule 56.1 Statement of Undisputed Facts in support of its motion for summary judgment stated that "Jurisdiction is proper in this judicial

district under . . . 28 U.S.C. § 1332 because the parties are citizens of different states . . . ." Dkt. 126 at ¶ 3.

In contrast, MapQuest's evidence that its headquarters are in Colorado (and not in Pennsylvania) is much stronger. It offers the affidavit of J.L. Novak, assistant general counsel to AOL, LLC, the parent company of MapQuest. Novak has been designated MapQuest's Fed. R. Civ. P. 30(b)(6) witness in this matter and is competent to testify about the information known or reasonably available to the MapQuest, Inc. organization. MapQuest Remand Reply Ex. A, Decl. of J.L. Novak ¶ 2. Novak averred that as of November 2005, MapQuest's executive management team had relocated to MapQuest's Denver, Colorado offices and that MapQuest is headquartered in Colorado. *Id.* at ¶ 8-9. Novak's affidavit also explained that a separate corporate entity, MapQuest PA, Inc. ("Mapquest PA"), is in fact headquartered in Pennsylvania and had been prior to March 2008, explaining why CIVIX found some documents referencing MapQuest's Pennsylvania headquarters. MapQuest PA is not a party to this litigation. At the evidentiary hearing held before this Court on August 21, 2009, CIVIX presented its evidence of MapQuest's alleged Pennsylvania headquarters (specifically, the unauthenticated web documents described above), but this Court found Novak's explanation credible. Therefore, this Court holds that because MapQuest's headquarters are in Colorado, the parties are not diverse and this Court would not have original jurisdiction pursuant to 28 U.S.C. § 1332.

CIVIX offers two additional bases of removal jurisdiction, neither of which convince this Court that its jurisdiction is appropriate. First, CIVIX argues that its Lanham Act counterclaim—which this Court dismissed on February 11, 2009, describing CIVIX's failure to allege sufficient facts to support this claim as "startling"—gives this Court supplement jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. However, the Seventh

Circuit has stated clearly that a federal counterclaim cannot support a district court's subject matter jurisdiction. *See, e.g., Salton, Inc. v. Philips Domestic Appliances and Personal Care B.V.*, 391 F.3d 871, 875 (7th Cir. 2004) ("[C]laims in a counterclaim cannot confer federal jurisdiction over a case.").

Second, CIVIX filed a bench memorandum asserting, for the first time, patent law jurisdiction under 28 U.S.C. § 1338(a) as a ground for subject matter jurisdiction. Section 1338(a) applies, in relevant part, only when a plaintiff's "well-pleaded complaint establishes that . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). A determination of whether the parties' right to relief necessarily depends on the resolution of a substantial question of patent law requires this Court to discuss the claims in this case. *See generally* Memorandum Opinion and Order dated February 11, 2009.

CIVIX is the owner of U.S. Patent Nos. 6,385,622; 6,408,307; and 6,415,291 (the "CIVIX patents"), which are patents relating to geographical search technology. CIVIX's business is the licensing and enforcement of the CIVIX patents. On May 3, 1999, CIVIX and MapQuest entered into two integrated agreements (collectively, the "Agreement") that conferred upon MapQuest a license that gives it the right to "make, create, modify, improve, design, have made, import, use, sell or offer for sale, sublicense, transfer and/or assign any and all past, present, and future MAPQUEST Technology covered by any claim of the CIVIX Patents" and "to sublicense, transfer and/or assign to any MAPQUEST customer the right to undertake any and all past, present and future Permitted Uses with respect to the MAPQUEST Technology," and also contained a covenant-not-to-sue. Compl. ¶ 6, Ex. B at 3.

MapQuest sued CIVIX for a breach of the covenant-not-to-sue that was agreed to by the parties in 1999. MapQuest asserts that CIVIX breached that covenant when CIVIX sued MapQuest customers Verizon Information Services, Yellowpages.com, Orbitz LLC, Hotels.com, and Travelocity. The language of the covenant is broad; CIVIX agreed that it would not "bring any lawsuit, cause of action, claim, or demand of any kind against . . . any MapQuest customer, with respect to the creation, modification, improvement, design of, or any manufacture, important, use, sale, or offer for sale by any such customer of the MapQuest Technology or the Permitted Uses . . . ." Dkt. 130 at ¶ 8. The Agreement defines MapQuest Technology as:

> [P]roprietary software, products, equipment, systems and services, and related know-how [that] MapQuest has created and developed and will continue to create and develop.

"Permitted Uses" is defined as the rights:

> (i) for use of the MAPQUEST Technology by such customer as so licensed, transferred and/or assigned, or (ii) with the right for such customer to incorporate the MAPQUEST Technology in, or use the MAPQUEST Technology with, other software, products, equipment, systems and services, or (iii) with the right for such customer to modify, enhance or revise the MAPQUEST Technology for use as so modified, enhanced or revised, or in connection with other software, products, equipment, systems and services, or (iv) with the right for such customer to sublicense and/or resell software products, equipment, systems and services as described in (i), (ii) and (iii) in accordance with the license agreements with MAPQUEST (and in each such case, with the concurrent right of MapQuest's and each such customers and/or end users).

*Id.* at ¶ 9-10. The issue to be determined in this litigation is whether MapQuest's customers' accused activities involved a "Permitted Use" of "MapQuest Technology"; if so, CIVIX's lawsuits against them breached the covenant-not-to-sue. This inquiry requires a comparison of MapQuest's licensed products with the manner in which MapQuest's customers operated their websites, and does not require an analysis of the CIVIX patents. This is amply demonstrated in the parties briefs in MapQuest's Motion for Summary Judgment on Counts I, III, and IV; neither party asserted that this Court need construe the claims of CIVIX's patents; conduct an

infringement analysis based on its claim construction; conduct an invalidity analysis to determine if the claims of the patents-in-suit are invalid for anticipation or obviousness; nor conduct an unenforceability analysis to determine if the patents-in-suit are unenforceable because of fraud or inequitable conduct. In short, this Court would not have had to analyze patent law issues in order to determine the merits of the parties' claims at summary judgment. Rather, the motion for summary judgment hinged on the comparatively simple comparison described above, between the Agreement's definition of the Permitted Uses of MapQuest Technology and the actual uses by MapQuest customers. Jurisdiction under § 1338(a) would therefore be inappropriate.

## CONCLUSION

For the foregoing reasons, this Court lacks diversity jurisdiction, supplemental jurisdiction, and patent law jurisdiction over this matter. In accordance with 28 U.S.C. § 1447(c), MapQuest's Motion to Remand is granted. This Court declines, in its discretion, to award costs and fees to MapQuest pursuant to 28 U.S.C. § 1447(c), especially in light of its many "mistakes" in its web pages and in filings with state agencies. This matter is remanded to the Circuit Court of Cook County, Illinois County Department, Law Division.

Enter:
/s/ David H. Coar
David H. Coar
United States District Judge

**Dated:** August 24, 2009